IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SILVER MOUNTAIN RESOURCES, LLC,**

    **Plaintiff,**

v.                                                                                                   13-cv-0469 SMV/GBW

**SILVER HOLDINGS, LLC, and
BULLARD'S PEAK CORP.,**[1]

    **Defendants.**

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiff Silver Mountain Resources, LLC's ("SMR") Motion for Summary Judgment on Count One of Its Complaint . . . [Doc. 49] ("MSJ"), filed on November 13, 2013, and SMR's Motion to Strike Part of Karren Weathers' Affidavit ("Motion to Strike"), contained within its Reply in Support of the MSJ [Doc. 55], filed on December 27, 2013.[2] Defendant Silver Holdings, LLC ("SH") filed its Response to the MSJ on December 10, 2013. [Doc. 54]. SMR filed its Reply in Support of the MSJ on December 27, 2013. [Doc. 55]. Additionally, SH filed a Response to the Motion to Strike on January 10, 2014. [Doc. 56]. SMR filed a Reply in Support of the Motion to Strike on January 22, 2014. [Doc. 55]. Oral argument was held on February 11, 2014. [Doc. 59]. The Court, having considered the briefs, oral arguments, and relevant law, and being otherwise fully advised in the

---

[1] Defendant Bullard's Peak Corp. was dismissed without prejudice on August 29, 2013. [Doc. 16].

[2] The Court discourages the practice of filing motions within other filings. Neither the Federal Rules of Civil Procedure nor the Local Rules explicitly prohibit the filing of motions within other documents. However, by imposing certain requirements as to form, both imply that filing a motion within a reply would be improper. *See* Fed. R. Civ. P. 7(b)(2) (requiring that motions have their own captions); D.N.M.LR-Civ. 7-2(b) (requiring that a motion or reply have its own certificate of service).

premises, finds that Plaintiff's Motion for Summary Judgment [Doc. 23] is well-taken in part and will be **GRANTED IN PART and DENIED IN PART**. Additionally, the Court finds that Plaintiff's Motion to Strike Part of Karren Weathers' Affidavit, contained within its Reply to the MSJ [Doc. 55], is not well-taken and shall be **DENIED as moot**.

## Background

On October 22, 2012, SMR and SH entered into a Purchase and Sale Agreement and Escrow Instructions ("Purchase Agreement") whereby SMR would buy and SH would sell certain mining claims near Silver City, New Mexico. [Doc. 50] at 3, ¶ 1; [Doc. 54] at 1, ¶ 1. The current disagreement between the parties involves their respective rights and obligations under the Purchase Agreement.

At the time that the parties entered into the Purchase Agreement, SH was leasing the property from Bullard's Peak Corporation ("BPC") and held an option to purchase the property under a Lease and Purchase Option ("LPO") agreement between it and BPC. [Doc. 50] at 3, ¶ 1; [Doc. 54] at 1, ¶ 1. The Purchase Agreement allowed SH to choose whether to sell the property or its right to purchase the property under the LPO. [Doc. 50-1] at 1; [Doc. 54] at 1, ¶ 1. At some point during the due diligence period of the Purchase Agreement, BPC refused to consent to the assignment of SH's right to purchase the property. *Compare* [Doc. 54] at 5, ¶ 6, *with* [Doc. 55] at 7, ¶ 6.

Around the same time, SH acted or failed to act in several respects that are now the subject of the MSJ. On December 13, 2012, SH allowed a drilling permit to expire. [Doc. 50] at 4, ¶7; [Doc. 54] at 3, ¶ 7; [Doc. 54-5] at 2. Additionally, on December 21, 2012, SH entered into a Net Smelter Return Royalty Agreement ("NSR Royalty Agreement") with Adit-Up, LLC

("Adit-Up"). [Doc. 50] at 5, ¶ 10; [Doc. 54] at 3, ¶ 10. SH and Adit-Up recorded a Notice of Memorandum of NSR Royalty with the Grant County Clerk on January 2, 2013. [Doc. 50-2] at 36. On February 21, 2013, SMR provided SH with a Conditional Notice of Fulfillment that stated SMR had examined the title to the property and was prepared to make the non-refundable escrow deposit. [Doc. 50-2] at 41. In the Conditional Notice of Fulfillment, SMR objected to SH's failure to provide certain documents as required by Section 4.3.1 of the Purchase Agreement and demanded renewal of the expired drilling permit. *Id.* at 41–42; [Doc. 50] at 5, ¶11; [Doc. 54] at 3, ¶ 11. SMR did not raise any objections to the NSR Royalty Agreement in that document. *See generally* [Doc. 50-2].

On February 25, 2013, SMR deposited into escrow a document purporting to be a negotiable bond issued by ING Bank in the amount of one million euros. [Doc. 23] at 2; [Doc. 31] at 2. SMR scheduled the first closing date on March 25, 2013, but escrow did not close on that date. *Compare* [Doc. 50] at 6, ¶ 16, *with* [Doc. 54] at 4, ¶ 16. A second closing date was scheduled for April 18, 2013, but escrow did not close on that date either. *Compare* [Doc. 50] at 6, ¶ 17–18, *with* [Doc. 54] at 3, ¶ 17–18. SH does not dispute that it never delivered title documents. [Doc. 50] at 5, ¶ 14 & at 6, ¶ 18; [Doc. 54] at 4, ¶ 14 & 18.

SMR filed suit for breach of contract on May 20, 2013. [Doc. 1]. SH moved for summary judgment arguing that it was excused from closing under the Purchase Agreement because SMR deposited an allegedly fraudulent bond into escrow in lieu of cash. [Doc. 23] at 3. The Court denied SH's motion for summary judgment on November 14, 2013. [Doc. 52].

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" regarding that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it "might affect the outcome of the suit under the governing law." *Id.*

When a party moves for summary judgment, he bears the initial burden of showing what parts of the record demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324; *Liberty Lobby*, 477 U.S. at 256. It is not enough for the party opposing a properly supported motion for summary judgment to "rest upon mere allegation or denials of his pleadings . . . ." *Liberty Lobby*, 477 U.S. at 256. Nor can a party avoid summary judgment by repeating conclusory allegations, opinions unsupported by specific facts, or speculation. *MacKenzie v. Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249 (citations omitted).

When reviewing a motion for summary judgment, courts should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See id.* Second, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party and construe all evidence in the light most favorable to the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Third, the court cannot decide any issues of credibility. *Liberty Lobby*, 477 U.S. at 255.

### New Mexico Contract Law

A federal court hearing a contract dispute by virtue of its diversity jurisdiction applies state law in analyzing the substantive legal questions associated with the dispute. *See Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). Because the parties opted in their contract to have New Mexico state law to govern the interpretation of their contract, the Court applies New Mexico law in resolving the MSJ. *See id.*; [Doc. 50-1] at 12.

To prevail on a breach of contract claim, the plaintiff must demonstrate: (i) the existence of a contract, (ii) breach of the contract, (iii) causation, and (iv) damages. *See Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, 119 N.M. 436, 442, *overruled on other grounds by Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op., Inc.*, 2013-NMSC-017. The interpretation of a contract's provisions and the accompanying obligations thereunder are questions of law to be decided by the court. *See Campbell v. Millennium Ventures, LLC*, 2002-NMCA-101, ¶ 15, 132 N.M. 733, 736; *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 7, 123 N.M. 526, 532. New Mexico courts "consider the documents as a

whole to determine how they should be interpreted," and "can consider the circumstances surrounding the creation of the contract as well as the contract itself." *Campbell*, 2002-NMCA-101, ¶ 15.

## **Analysis**

The parties' present disagreement is underpinned by competing interpretations of the Purchase Agreement. Interpretation of the Purchase Agreement presents questions of law to be resolved by the Court. *See Campbell*, 2002-NMCA-101, ¶ 15. The facts upon which the Court bases its analysis are not in dispute.

SMR contends that SH materially breached the Purchase Agreement in four ways. First, SMR argues that SH failed to deliver the required title documents at the first and second scheduled closings. [Doc. 50] at 8–9. Second, SMR argues that SH also failed to provide other documents specified in Section 4.3.1 of the Purchase Agreement. *Id.* at 9. Third, SMR argues that SH allowed a drilling permit to expire on December 13, 2012. *Id.* at 8. Fourth, SMR alleges that SH created a cloud on title by entering into the NSR Royalty Agreement with Adit-Up and filing notice of the NSR Royalty Agreement with the Grant County Clerk. *Id.* As a result of these breaches, SMR claims it was unable to complete closing and suffered damages due to the loss of favorable financing and lost exploitation of the property. *Id.* at 9.

The Court determines that SH materially breached the Purchase Agreement by failing to deliver title documents and other documents specified in Section 4.3.1 of the Purchase Agreement. Additionally, the Court determines that while SH breached the Purchase Agreement by failing to maintain the drilling permit, SMR fails to demonstrate that the breach was material. The Court also determines that SMR fails to demonstrate that it is entitled to summary judgment

on the basis of the NSR Royalty Agreement. Lastly, the Court finds that the Motion to Strike is moot.

## I. SH failed to deliver title documents.

On the first issue—SH's failure to provide title documents—SH fails to demonstrate that there is a genuine issue of material fact for trial. SH does not dispute that it failed to provide the title documents at issue on either scheduled closing date. *Compare* [Doc. 50] at 5, ¶ 14 ("SH never delivered clean and unencumbered title or acceptable Title Policy to the Property."), *and* [Doc. 50] at 6, ¶ 18 ("SH again failed to submit all of the required documents to the Title Company at least two business days prior to the second Closing Date on April 18, 2013."), *with* [Doc. 54] at 4, ¶ 14 ("Undisputed that Closing did not occur."), *and* [Doc. 54] at 4, ¶ 18 ("Undisputed that Closing did not occur."). Rather, SH argues that closing could not have been scheduled under the terms of the contract because certain preconditions were not met. [Doc. 54] at 3. However, SH's argument is contradicted by its own prior admission that closing was scheduled. *Compare* [Doc. 1] at 5, ¶ 20 ("Pursuant to the Purchase Agreement, SMR and Defendant SH scheduled the first Closing Date for escrow to take place on March 25, 2013."), *with* [Doc. 26] at 3, ¶ 20 ("Admitted."). Accordingly, the Court finds that there is no genuine dispute over whether closing was scheduled to occur or whether SH failed to provide the necessary title documents.

> A. *Delivering the title documents was not a condition precedent to SH's obligations to perform under the Purchase Agreement.*

SH argues that although it did not deliver title documents, such failure should be considered failure of a condition precedent to the Purchase Agreement and not a material breach. [Doc. 54] at 9–10. SH posits that under Section 4.8 either party could terminate the Purchase

Agreement upon written notice if conditions precedent were not met. *Id.* at 10. SMR replies that Section 4 of the Purchase Agreement "pertains to those conditions that must occur for Buyer to be obligated to purchase the Property—it does not pre-condition *Seller's* obligation to sell." [Doc. 55] at 11 (emphasis in original). The Court agrees with SMR.

Even a cursory analysis of the provisions of Section 4 reveals that SH's interpretation of the Purchase Agreement is incorrect. As seller, SH covenanted in Section 4.2.2 that it "shall be in a position to deliver clean and unencumbered title . . . to the Property." [Doc. 50-1] at 6. In Section 4.2.3, SH also promised to deliver all documents required to facilitate closing to the title company two business days before the closing date. *Id.* Section 4.1 of the Purchase Agreement elaborates that "*Buyer's* obligation to purchase the property shall be subject to the fulfillment of the conditions precedent enumerated in Section 4.2 . . . ." *Id.* at 5 (emphasis added). That section also provides that Sections 4.2.2 and 4.2.3 "constitute covenants by Seller." *Id.* Notably absent from Section 4.1 is anything indicating that Sections 4.2.2 and 4.2.3 were conditions precedent to SH's obligation to perform. *Id.*

The Court's reading of the Purchase Agreement is bolstered by the presence of Section 4.9—a separate section labeled "Seller's Conditions Precedent." Under Section 4.9, "Seller's obligation to sell the Property shall be subject to Buyer's ability to Close the escrow on the Closing pursuant to Section 8 . . . ." *Id.* at 7. Neither Section 4.9 nor Section 8 includes anything indicating that SH's ability to provide title documents was a condition precedent to its obligation to sell the property.

Section 4.8, which SH argues entitles it to terminate the agreement, is entitled "Buyer's efforts to fulfill the conditions precedent set forth in Section 4." It provides, in relevant part:

> If all of the conditions precedent have not been fulfilled through no fault of Seller and if Buyer has not deposited the non-refundable Due Diligence Deposit with Title Company, or if Buyer has not either given written notice of fulfillment, or waived in writing fulfillment of the applicable condition precedent . . ., then either party shall have the right to terminate this Agreement at any time thereafter by written notice to the other party and neither Buyer nor Seller shall have any further obligations . . . If Buyer does deposit the non-refundable Due Diligence Deposit with Title Company . . . then Closing shall take place on or before thirty (30) days from the date of deposit.  In approving the items set forth in Section 4.2 through 4.7 inclusive, Buyer shall have the right to approve such matters within its sole and absolute discretion.

*Id.* at 7.  The Court determines that no fair reading of Section 4.8 supports SH's contention that it could terminate the Purchase Agreement if it failed to deliver the title documents.  Even if SH were correct in its reading of Section 4.8, SH has not alleged—much less provided any evidence to establish—that it terminated or attempted to terminate the Purchase Agreement under Section 4.8.  *See generally* [Doc. 54].  Accordingly, the Court determines that SH's duty to provide title documents was not a condition precedent to its obligation to sell, and its failure to provide title documents was a material breach of the Purchase Agreement.

      B.  *The doctrine of impracticability does not relieve SH of the obligation to perform.*

SH also argues that its obligation to provide title documents should be excused under the doctrine of impracticability because BPC did not fulfill its contractual obligation to SH to provide title to the property.  [Doc. 54] at 8–9.  The Court determines that the doctrine is inapplicable here.

New Mexico law provides that "[t]he doctrine of impracticability . . . applies in situations where performance by a party 'is made impracticable without his fault by the occurrence of an event[,] the non-occurrence of which was a basic assumption on which the contract was made.'" *Summit Props., Inc. v. Pub. Serv. Co. of New Mexico*, 2005-NMCA-090, 138 N.M. 208, 219

(quoting Restatement (Second) of Contracts § 261 (1979) (alteration in original)).  This doctrine generally applies where the occurring event was unforeseeable by the contracting parties and does not apply where a party impliedly assumes a greater obligation to perform despite any impracticability.  *See Wood v. Bartolino*, 1944-NMSC-018, ¶10, 146 P.2d 883, 886 ("The important question is whether an *unanticipated circumstance* has made performance of the promise vitally different from what *should reasonably have been within the contemplation* of both parties when they entered into the contract."); Restatement (Second) of Contracts § 261 cmt. e (1981) ("[I]f a party contracts to render a performance that depends on some act by a third party, he is not ordinarily discharged because of a failure by that party because this is . . . a risk that is commonly understood to be on the obligor."); *see also Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1176 (10th Cir. 2008) (applying Oklahoma law and noting that "the defense is not available if a promisor was aware of a potential risk that could interfere with its performance and assumed that risk by not explicitly addressing it in the contract.").

Here, there are no unforeseeable circumstances rendering SH's performance impracticable.  The Purchase Agreement acknowledged that SH did not own the property,[3] and SH knew that it had to acquire the property from BPC or receive consent from BPC to sell the purchase option under LPO.[4]  From the outset, SH planned to enter into some sort of transaction

---

[3] The Recitals portion of the Purchase Agreement states that "Seller desires to sell the Property, or in the alternative sell Seller's purchase option as set forth in the LPO . . . ." [Doc. 50-1] at 1.  Furthermore, Section 1.1 provides that "all references to Buyer's purchase of the Property may also be construed as being Buyer's purchase of Seller's purchase rights under the LPO at Seller's election." *Id.*

[4] Section 7.8 of the Purchase Agreement, labeled "Other Agreements, Third Party Consents," makes clear that SMR and SH contemplated that a transaction between SH and BPC would be necessary.  SH expressly covenanted that "[n]o consents . . . by any third party are necessary to permit the consummation by Seller of the transactions contemplated by this Agreement.  In the event Seller elects to sell and assign its rights and entitlement under the

with BPC to fulfill its obligations under the Purchase Agreement. The risk that a contingency might prevent BPC from delivering acceptable title to SH was not only foreseeable, it was obvious. Under the contract, SH explicitly bore that risk. Accordingly, the Court finds that the doctrine of impracticability does not relieve SH from the requirement to deliver title documents. As a result, SH was obligated to deliver the title documents at closing, and the Court finds its failure to do so to be a material breach of the Purchase Agreement.

> C. *The Court need not resolve the question of damages in order to grant summary judgment on liability.*

SH argues that SMR has failed to demonstrate damages and therefore is not entitled to judgment as a matter of law. [Doc. 54] at 10. The Court finds this argument unpersuasive for several reasons. First, SMR has submitted record evidence demonstrating that it lost favorable financing terms. [Doc. 50-3] at 9. Second, it is uncontested that SMR has been unable to make beneficial use of the property. Lastly, courts may grant summary judgment solely on the issue of liability for breach of contract, and then allow a jury to determine the nature and extent of damages. *See Constr. Contracting & Mgmt., Inc. v. McConnell*, 1991-NMSC-066, ¶ 10, 112 N.M. 371, 374. Thus, the Court will grant SMR summary judgment on liability because SH failed to deliver the title documents in material breach of the Purchase Agreement. The Court need not make any determination with respect to damages at this time and declines to do so.

> D. *The Court's prior ruling on SH's Motion for Summary Judgment does not preclude the granting of SMR's Motion for Summary Judgment.*

In its Response to the Motion to Strike, SH argues that the Court's Order Denying Defendant's Motion for Summary Judgment [Doc. 52] precludes a grant of summary judgment

---

terms of the LPO, then Seller shall be responsible for obtaining the necessary written consent from Bullard's Peak Corporation." [Doc. 50-1] at 10.

11

in favor of SMR. [Doc. 56] at 2. Taking a snippet of the Court's prior order, SH argues that the Court made specific findings that there were genuine issues of material fact as to whether it was excused from performance under the Purchase Agreement. *Id.* SH reads the Court's prior order out of context. Rather, the Court denied summary judgment to SH because it had not demonstrated that it was excused from performance, and therefore, had not met its initial burden as the movant. [Doc. 52] at 6.

SH moved for summary judgment arguing that it was excused from the obligation to close under the Purchase Agreement because the agreement required the deposit of one million dollars in cash into escrow and SMR instead deposited a one-million-euro bond that was allegedly fraudulent. [Doc. 23] at 3. The Court found that there was a genuine dispute regarding whether the bond was fraudulent. [Doc. 52] at 6. Additionally, the Court also found that "SH (1) did not object to the deposit of the bond in the escrow account at the time it was deposited; and (2) did not raise the issue of the validity of the bond until after the closing date." *Id.* As a result, the Court determined that it could not grant summary judgment to SH because there were issues regarding "whether SH waived the condition [that SMR deposit cash instead of the bond] by not raising an objection at an earlier date." *Id.* On the subject of whether SH was excused from closing because of the allegedly fraudulent bond, the Court stated that "SH has provided the Court with no authority in its Motion, Reply, or at oral argument suggesting that it was excused from closing, even though it never raised the [bond] issue . . . prior to closing." *Id.* As a result, the Court denied summary judgment regarding excusal from closing because SH *had not met its initial burden* as the movant. *Id*. Accordingly, the Court's prior order does not prevent granting summary judgment in favor of SMR.

> *E. SH was not excused from closing under Purchase Agreement because it ratified acceptance of the bond and waived any objections to the deposit of the bond.*

At oral argument, SH contended that it was relieved from closing because of the deposit of the allegedly fraudulent bond. However, the Court finds that SH ratified acceptance of the bond and waived any objections. Additionally, the Court finds that because the parties agreed that the bond would be substituted for cash at closing, the deposit of the bond does not relieve SH of the obligation to close regardless of whether it was fraudulent.

In its motion, SMR argues that SH ratified acceptance of the bond because Karren Weathers explicitly approved the deposit of the bond into escrow in lieu of the cash deposit required by the Purchase Agreement. [Doc. 50] at 10. In the alternative, SMR argues that SH waived any objections regarding the bond by waiting until after SMR declared SH in default of the Purchase Agreement. *Id.* at 11. In support, SMR submits an affidavit by Dan S. Geiger, dated November 4, 2013, and filed on November 11, 2013. [Doc. 50-2] at 4. He states that through telephone calls and emails, Karren Weathers, the managing member of SH, agreed to accept the bond so long as it was replaced with cash at closing. *Id.* at 1–3; *see also* [Doc. 50-2] at 15 & 17 (emails confirming the telephone conversation between the parties regarding the deposit of the bond into escrow).

In its response, SH does not dispute that Karren Weathers accepted the deposit of the bond into escrow. *See generally* [Doc. 54]. Furthermore, her affidavit dated December 9, 2013, does not dispute that she accepted the deposit of the bond into escrow. *See generally* [Doc. 54-2]. SH provides no response to the argument that it ratified acceptance of the bond and waived its objections. *See generally* [Doc. 54]. SH's only opposition is that "SMR has offered no evidence demonstrating that SH agreed to the substitution of the bond . . . ." [Doc. 54] at 2.

13

However, SMR has submitted an affidavit and supporting email documentation, [Doc. 50-2] at 1–3, 15, 17, and SH has made no effort to rebut them.  Accordingly, the Court finds that that SH ratified the acceptance of the bond and waived any objections.  Furthermore, because the parties agreed that the bond would be substituted for cash at closing, the deposit of the allegedly fraudulent bond did not relieve SH of the obligation to attend closing and provide title documents.

## II.  **SH failed to produce specified documents from BPC.**

SMR contends that SH breached the Purchase Agreement by failing to produce specified documents from BPC as required by Section 4.3.1.  [Doc. 50] at 9.  Under Section 4.3.1, SH was obligated to deliver "[a] copy of the original Mineral Survey map creating the boundaries of the patented claims, and the Claim Survey created for the purposes of filing the original location Notices for the unpatented Lode Claims, if available."  [Doc. 50-1] at 5.  Section 4.3 required SH to deliver these documents within five days of execution of the Purchase Agreement "to the extent that such [documents] are available."  *Id.*  SH does not deny that these documents were never produced, nor does it argue that the documents were unavailable.  Indeed, SH does not respond to this argument at all.  *See generally* [Doc. 54].  Accordingly, the Court finds that SH failed to deliver the documents described in Section 4.3.1 and therefore breached that section of the Purchase Agreement.

## III.  **SH breached the Purchase Agreement by failing to maintain the drilling permit, but SMR does not demonstrate that such breach was material.**

SMR argues that SH failed to maintain a drilling permit, and that in doing so, it violated Sections 4.5 and 6.2 of the Purchase Agreement.  [Doc. 50] at 8.  SH contends that Section 3.1.1 of the Purchase Agreement required SMR to maintain any applicable permits, and therefore SH

is not responsible for the lapsed drilling permit. [Doc. 54] at 6. SMR replies that Section 4.7 makes clear that only SH had the ability under New Mexico law to renew the expiring drilling permit, and therefore SH must have borne responsibility for the permit. [Doc. 55] at 9. The Court finds that the most straightforward reading of the Purchase Agreement placed the burden of maintaining the permit on SH.

At the outset, the Court notes that the only language in the Purchase Agreement directed toward renewal of expiring permits is found in Section 6.2. Under Section 6.2, SH agreed to "keep in effect all operating permits of any kind, . . . licenses, conditional use permits, and other specific entitlements issued with respect to the Property by any applicable public authority . . . [and] undertake, or assist Buyer in undertaking prior to the Closing, timely renewal of such entitlements or approvals." [Doc. 50-1] at 7. A plain reading of this language places the burden of maintaining and renewing permits connected to the property on SH. SH has suggested no other possible reading. *See generally* [Doc. 54]. The permit at issue expired on December 13, 2012. [Doc. 54-5] at 2. Accordingly, the Court determines that SH failed to maintain the drilling permit and thereby breached Section 6.2 of the Purchase Agreement.

The Court finds SH's argument regarding Section 3.1.1 unpersuasive. That section provides that:

> Buyer shall maintain any and all regulatory requirements for exploration on the Property during the due diligence period, including but not limited to, obtaining necessary exploration permits from the U.S. Forest Service on behalf of Seller, at Buyer's expense. Seller agrees to cooperate with Buyer regarding the permit processing, including execution of any and all documentation as may be required.

[Doc. 50-1] at 3. The due diligence period began to run on October 22, 2012, when the Purchase Agreement was executed, and ran for 120 days—until February 19, 2013. *Id.* at 2–3 & at 13.

While the drilling permit expired during the due diligence period, it is unclear whether the drilling permit was necessary for SMR to perform exploration on the property, such that SMR would have any obligation to maintain it under Section 3.1.1.  SH has presented no evidence supporting its contention that Section 3.1.1 applies.

SH argues that the lapse of the permit was not a material breach because the permit was non-transferrable and therefore could not have been useful to SMR.  [Doc. 54] at 6 n.1.  In its Reply, SMR provided no response to SH's argument that the failure to maintain the drilling permit was not material.  *See generally* [Doc. 55].  Accordingly, the Court determines that SMR has failed to meet its burden to demonstrate it is entitled to judgment as a matter of law on the materiality of the drilling permit.

New Mexico courts have described a material breach as "failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract."  *Collado v. City of Albuquerque*, 2002-NMCA-048, ¶ 20, 132 N.M. 133, 137 (quoting *Famiglietta v. Ivie-Miller Enters.,* 1998-NMCA-155, ¶ 17, 126 N.M. 69, 74).  To determine whether a breach is material, courts should examine five factors: (1) the extent to which the injured party will be deprived of the benefit he or she reasonably expected to receive from the contract; (2) the extent to which the breaching party will suffer forfeiture if the breach is deemed material; (3) whether the injured party can be adequately compensated in damages for the breach; (4) the likelihood that the breaching party will cure his or her failure to perform under the contract; and (5) whether the breaching party's conduct comported with the standards of good faith and fair dealing.  *See Famiglietta,* 1998-NMCA-155, ¶ 18, 126 N.M. 69, 74.

SH's failure to maintain the drilling permit may not have defeated the essential purpose of the contract.  All materials submitted thus far indicate that the permit was non-transferrable and would not have materially benefitted SMR.  *See, e.g.*, [Doc. 50-1] at 7 ("The ability to obtain permits lies solely with the operator and is not tied to the land."); [Doc. 50-2] at 42 ("The economic impact is undetermined.").  Accordingly, the first materiality factor weighs strongly against SMR.  Neither party has put forward argument or evidence regarding the remaining factors.  Thus, while SH breached the Purchase Agreement by failing to maintain the drilling permit, the Court declines to find the breach to be material at this time.[5]

### IV. SMR fails to demonstrate it is entitled to judgment regarding the NSR Royalty Agreement.

SMR alleges that SH breached Sections 6.2 and 7.2 of the Purchase Agreement by entering into the NSR Royalty Agreement with Adit-Up because that agreement extends past the closing date.  [Doc. 50] at 8.  SH argues that entering into the NSR Royalty Agreement did not violate the Purchase Agreement because SH retained an option to buy out any interests created under the NSR Royalty Agreement and would have done so at closing.  *Id*. at 7–8.  Pointing to the Conditional Notice of Fulfillment, SH also contends that SMR waived any claim relating to the NSR Royalty Agreement when it reviewed and approved the condition of title to the property.  *Id.*; [Doc. 50-2] at 41.  While SMR replies that there was nothing obligating SH to buy out any interests created under the NSR Royalty Agreement, [Doc. 55] at 10, it makes no response regarding whether it waived its objections to the NSR Royalty Agreement, *see*

---

[5]  Because the Court is not prepared to find the breach material, the Court is unconvinced by SMR's argument that SH violated Section 4.5 of the Purchase Agreement, which provides that "there shall be no material or adverse change in the physical or economic condition of the Property." [Doc. 50-1] at 6.

17

*generally* [Doc. 55].  As a result, SMR fails to demonstrate that it is entitled to summary judgment on this issue.

The Notice Memorandum of NSR Royalty was filed with the Grant County Clerk on January 2, 2013.  [Doc. 50-2] at 36.  SMR was aware of the existence of the NSR Royalty Agreement at least as early as February 16, 2013, as demonstrated by an email discussing it in detail.  [Doc. 54-1] at 1.  On February 21, 2013, SMR provided SH with a Conditional Notice of Fulfillment stating that it was prepared to make the non-refundable escrow deposit and was satisfied with the condition of title.  [Doc. 50-2] at 41.  SMR did not raise the NSR Royalty Agreement as an issue at that time.   Because SMR has provided no response to the argument that it waived its objections to the NSR Royalty Agreement, the Court will deny summary judgment on this issue.

## V. **SMR's Motion to Strike Part of Karren Weathers' Affidavit is moot.**

In its reply to the MSJ, SMR moves the Court to strike paragraph 12 of Karren Weathers' affidavit as speculative.  [Doc. 55] at 1.  SMR objects to Karren Weathers' statement that "[h]ad the sale contemplated by the [Purchase] Agreement proceeded to closing, SH intended to exercise its right to reacquire the NSR, and to thereby deliver unencumbered title to SMR at closing."  [Doc. 54-2] at 2.  Even if the Court were to strike paragraph 12 of the affidavit, the Court would still deny SMR summary judgment on the issue of whether SH breached the purchase agreement by entering into NSR Royalty Agreement.  As previously stated, SMR has provided no response to SH's argument that it waived its objections to the NSR Royalty

Agreement. Accordingly, Karren Weathers' statement plays no role in the Court's decision, and therefore, SMR's Motion to Strike shall be denied as moot.[6]

## Conclusion

The Court determines that SH materially breached the Purchase Agreement by failing to deliver title documents and other documents specified in Section 4.3.1. The Court also determines that SH breached the Purchase Agreement by failing to maintain the drilling permit that expired on December 13, 2012. Lastly, the Court determines SMR failed to demonstrate that it is entitled to summary judgment on the issue of the NSR Royalty Agreement.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff Silver Mountain Resources, LLC's Motion for Summary Judgment on Count One of Its Complaint . . . [Doc. 49] is **GRANTED with respect to liability** as follows:

1. SMR is awarded summary judgment for material breach of the Purchase Agreement due to SH's failure to provide title documents in violation of Sections 4.2.2 and 4.2.3.

2. SMR is awarded summary judgment for material breach of the Purchase Agreement due to SH's failure to provide the documents specified in Section 4.3.1.

3. SMR is awarded summary judgment for breach of the Purchase Agreement due to SH's failure to maintain the drilling permit in violation of Section 6.2.

Plaintiff Silver Mountain Resources, LLC's Motion for Summary Judgment on Count One of Its Complaint . . . [Doc. 49] is **DENIED** with respect to SMR's argument that SH breached the Purchase Agreement by entering into the NSR Royalty Agreement.

---

[6] The Motion to Strike fails to comply with D.N.M.LR-Civ. 7.1 regarding recitation of a good-faith request for concurrence, and the Court denies the motion for this reason as well.

**IT IS FURTHER ORDERED** that Plaintiff Silver Mountain Resources, LLC's Motion to Strike Part of Karren Weathers' Affidavit, contained in the Reply to the MSJ [Doc. 55] is **DENIED as moot.**

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**